## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| CRYSTAL McCOMBS,<br>　　　Plaintiff, | §<br>§<br>§ | |
| v. | § | CIVIL ACTION NO. H-08-1093 |
| | § | |
| FESTIVAL FUN PARKS, LLC and<br>PALACE ENTERTAINMENT<br>HOLDINGS, INC.,<br>　　　Defendants. | §<br>§<br>§<br>§ | |

## MEMORANDUM AND ORDER

This sexual harassment case was settled at mediation.  As part of the mediated settlement, the parties agreed for the Court to determine the amount of attorneys' fees to which Plaintiff Crystal McCombs is entitled.  Plaintiff filed a Brief in support of her request for fees [Doc. # 27], Defendants Festival Fun Parks LLC ("Festival") and Palace Entertainment Holdings, Inc. ("Palace") filed a Brief opposing the amount requested by Plaintiff [Doc. # 28], and Plaintiff filed a Reply [Doc. # 29].  Having reviewed the full record and applied governing legal standards, the Court determines that Plaintiff is entitled to recover attorneys' fees from Defendants in the amount of **$112,061.25**.

## I.   __BACKGROUND__

The factual background of this case has been set forth fully in prior opinions by the Court.  Briefly, Plaintiff filed this lawsuit alleging that she was sexually harassed, discriminated against on the basis of her sex, and retaliated against while she was employed by Defendants at Mountasia of Kingwood ("Mountasia").  Specifically, Plaintiff alleged that immediately after Jason Miller transferred to Mountasia as Plaintiff's supervisor in April 2007, he began to harass her sexually.  Plaintiff alleged that, after she complained about Miller's sexually harassing conduct, Defendants terminated her employment.

After the case was removed to federal court, Palace moved to dismiss for lack of personal jurisdiction.  The Motion to Dismiss was fully briefed and was denied in a Memorandum and Order entered July 16, 2008 [Doc. # 14].

In February 2009, after the close of discovery, Defendants filed a Motion for Summary Judgment.  As the basis for her sexual harassment claim, Plaintiff relied on both a hostile work environment theory and a *quid pro quo* theory.  In her response to the Motion for Summary Judgment, Plaintiff abandoned the hostile environment theory of her sexual harassment claim, relying only on the *quid pro quo* theory.  The Court denied the Motion for Summary Judgment on all claims except for the

2

abandoned hostile environment theory.  *See* Memorandum and Order entered April 9, 2009 [Doc. # 24].

The case then settled at mediation.  The mediated settlement provided for Festival to pay Plaintiff $27,500.00, to pay Plaintiff's costs, and for the issue of Plaintiff's attorneys' fees to be submitted to the Court for determination.  The parties do not dispute that McCombs is entitled to recover attorneys' fees, but they dispute the amount that should be awarded.  Plaintiff seeks $113,763.75, and Defendants argue Plaintiff should recover "no more than $18,334."  The attorneys' fee issue has been fully briefed and is ripe for decision.

## II.   **APPLICABLE LEGAL STANDARDS**

Attorneys' fee requests in the Fifth Circuit are governed by the "lodestar" analysis.  *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 661 (5th Cir. 2002), *abrogated on other grounds by Burlington  N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).  The lodestar is the product of the number of hours reasonably expended on the litigation by the movant's attorneys and the attorneys' reasonable hourly billing rate.  *Id.* (citing *Rutherford v. Harris County, Tex.*, 197 F.3d 173, 192 (5th Cir. 1999)); *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 404 (5th Cir. 2002).

In determining whether the amount of time expended on a matter is reasonable, courts are to review time records supplied by the movant and exclude from the

lodestar calculation all time that is "excessive, duplicative, or inadequately documented." *Mid-Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 234 (5th Cir. 2000) (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993)).  In deciding whether a fee is excessive, the court must consider whether "the requested fees . . . bear a reasonable relationship to the amount in controversy . . . ." *Northwinds Abatement v. Employers Ins.*, 258 F.3d 345, 354 (5th Cir. 2001) (citing *Jerry Parks Equip. Co. v. Southeast Equip. Co.*, 817 F.2d 340, 344 (5th Cir. 1987)); *see Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.  This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith."); *see also Migis v. Pearle Vision*, 135 F.3d 1041, 1047-48 (5th Cir. 1998).  However, disproportion between the amount of attorneys' fees sought and the damages recovered in the lawsuit does not alone "render the award of attorneys' fees excessive." *Northwinds*, 258 F.3d at 355.

A plaintiffs seeking attorneys' fees has the burden of showing the reasonableness of the hours billed, which includes proving that they are based on sound billing judgment. *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006).  "Billing judgment requires documentation of the hours charged and of the

hours written off as unproductive, excessive, or redundant." *Id.*   In setting a reasonable billing rate, courts are directed to consider the attorneys' regular rates as well as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); *see also La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995).   Where "the attorney's normal billing rate is within the range of market rates for attorneys with similar skill and experience, and the trial court chooses a different rate, the court must articulate its reasons for doing so." *Islamic Center of Miss. v. Starkville*, 876 F.2d 465, 469 (5th Cir. 1989).

Once the lodestar is determined, the court may adjust the figure upward or downward as necessary to make the award of attorneys' fees reasonable, *see Green*, 284 F.3d at 661, while ensuring that the fee award does not provide a windfall to the plaintiff, *see Kellstrom*, 50 F.3d at 328.   The lodestar is "presumptively reasonable and should be modified only in exceptional cases." *Watkins*, 7 F.3d at 457 (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)); *see also Saizan*, 448 F.3d at 800.

In deciding whether to make an adjustment to the lodestar figure, the court is to consider the "*Johnson*" factors, which include:

1.   The time and labor required to represent the client(s);
2.   The novelty and difficulty of the issues in the case;
3.   The skill requisite to properly perform the legal services;

4.      Preclusion of other employment by the attorney due to acceptance of the case;

5.      The customary fee charged for those services in the relevant community;

6.      Whether the fee is fixed or contingent;

7.      The time limitations imposed by the client or circumstances;

8.      The amount involved and the results obtained;

9.      The experience, reputation, and ability of attorney(s);

10.     The undesirability of the case;

11.     The nature and length of the professional relationship with the client;

12.     Awards in similar cases.

*Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974); *see also*

*Abner v. Kansas City Southern Ry. Co.*, 541 F.3d 372, 376 (5th Cir. 2008).

While the court is to "give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation, and ability of counsel," *Migis*, 135 F.3d at 1047, the most critical factor in this analysis is the "degree of success obtained." *Saizan*, 448 F.3d at 799 (citing *Singer v. City of Waco*, 324 F.3d 813, 829 (5th Cir. 2003)); *see also Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). However, this factor alone does not require that the Court adjust a fee award. *Saizan,* 448 F.3d at 799 ("While a low damages award is one factor which the Court may consider in setting the amount of fees, this factor alone should not lead the court to reduce a fee award."); *see also Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 392 (5th Cir. 2000).

## III.  **ANALYSIS**

### A.  **Lodestar Amount**

In calculating the lodestar figure, McCombs bears the burden of demonstrating that the hours expended *and* the rates charged by her counsel are reasonable.  *See Hensley*, 461 U.S. at 427.  McCombs is seeking to recover only for the time spent working on the case by her two primary attorneys; she does not seek to recover for work performed by two additional attorneys, a paralegal, and three law clerks. Plaintiff seeks to recover for work performed by Michael Starzyk at the rate of $300.00 per hour and for work performed by April Walter at the rate of $225.00 per hour.  These hourly rates are below the prevailing rates in Houston for attorneys with Starzyk's and Walter's education and experience, and Defendants do not challenge the rates charged by Plaintiff's counsel.[1]

Defendants argue primarily that the amount to which Plaintiff's counsel would be entitled under their contingency fee agreement is the upper limit of any fee award. As is discussed below, the existence of a contingency fee arrangement, however, is

---

[1]       According to the annual survey of "Hourly Billing Rates" published in the *Texas Lawyer* on June 30, 2008 [Exh. 17 to Plaintiff's Brief], the average billing rates in Houston for equity partner attorneys in 2007 and 2008 were between $357 and $375 per hour, well above the $300 per hour charged by Starzyk.  The average billing rates in Houston for a seventh-year associate in 2007 and 2008 were between $242 and $254 per hour, above the billing rate for Walker, currently in her thirteenth year of practice.

not dispositive of a reasonable fee amount.  *See Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989).

Alternatively, Defendants argue that the number of hours claimed by Plaintiff's counsel is inflated.[2]  Defendants argue that Plaintiff should not be permitted to recover for hours worked on claims on which she did not prevail or in pursuing claims against Palace.   The record reflects that Plaintiff successfully defended against Palace's motion to dismiss and against Defendants' motion for summary judgment on each claim asserted, although Plaintiff abandoned one theory of recovery under the sexual harassment claim.   The Court finds that no work was performed in connection with the claims against Palace which would not have been performed if the claims had been asserted only against Festival, ***except*** for work required by Palace's decision to file a motion to dismiss.   Additionally, the Court finds that no work was performed in connection with the hostile environment theory that was not equally applicable to the *quid pro quo* theory.   As a result, the Court will not exclude any hours based on these arguments.

---

[2]     Defendants challenge Plaintiff's counsel's use of "block billing," *i.e.*, recording and describing the total time spent working on the case each day.   The Court, however, finds that counsel's "block billing" descriptions of the work performed in this case are sufficient to enable the Court to assess the reasonableness of the work performed and the hours billed.

Defendants urge the Court to exclude hours that they claim Plaintiff's counsel expended on unnecessary research, discovery, pretrial matters, and matters that could have been performed by non-attorney staff. The Court has carefully reviewed the specific challenges asserted by Defendants in their Brief at pages 10-12. Much of the work, such as the work regarding Todd Wulffson, was necessary for preparing what proved to be a successful response to Palace's motion to dismiss for lack of personal jurisdiction. Other work challenged by Defendants was *de minimis*. For example, internet research regarding defense counsel was included in a billing entry of less than one hour that also included a status report to the client, reviewing a court order, preparing Plaintiff's Certificate of Interested Parties, and reviewing Defendants' Notice of Removal. The Court also finds that it was not unreasonable for Walker to begin work on Plaintiff's response to the anticipated motion for summary judgment before she began a lengthy maternity leave. The challenged billing entries that Defendants claim should have been performed by non-attorney personnel are also *de minimis* and were likely performed by counsel in less time than they would have expended instructing a non-attorney to perform the task. Additionally, Defendants believe that "prepare typewritten notes" means preparing a typewritten copy of handwritten notes that already existed and that "file notes regarding [a certain topic]"

means to place notes into a file folder rather than to prepare notes for the file.  It is unclear whether Defendants' understanding of these billing entries is correct.

The Court agrees with Defendants, however, that the internet research and email to McCombs "regarding 'Gravity' song" was unnecessary.  Because the billing entry that includes that work also includes several discovery matters, the Court will reduce the 1.5 hours for that date to 1.0 hour.  The Court also agrees with Defendants that it was unnecessary for Starzyk to sit in with Walker for the deposition of Gene Muncy[3] and, therefore, will eliminate the 5.3 hours charged by Starzyk for that work.

Defendants challenge counsel's claim for $6,645 for hours spent by Starzyk and Walker preparing the fee request.  Defendants claim that the "mediated agreement to settle all of Plaintiff's claims except attorneys' fees was not an open invitation to generate additional fees."  *See* Defendants' Brief, p. 11.  Defendants agreed, however, for the issue of Plaintiff's attorneys' fees to be resolved by the Court separately.  Defendants also agreed to a briefing schedule on the attorneys' fee issue.  *See* Briefing Schedule for Submission of Plaintiff's Attorneys' Fees [Doc. # 26].  "An award of reasonable attorneys' fees may include compensation for work performed in preparing and presenting the fee application."  *Shepherd v. Dallas County, Texas*, __ F. Supp.

---

[3]     Plaintiff's counsel previously deleted from Plaintiff's claim for attorneys' fees all other instances where both attorneys attended a deposition, requesting fees only for the hours worked by the attorney who conducted the deposition.

2d __, 2009 WL 977294, *3 (N.D. Tex. Apr. 10, 2009) (quoting *Case v. Unified Sch.*

*Dist. No. 233, Johnson County, Kan.,* 157 F.3d 1243, 1254 (10th Cir. 1998)); *see also*

*Johnson v. Prudential Ins. Co.*, __ F. Supp. 2d __, 2008 WL 901526, *10 (S.D. Tex.

Mar. 31, 2008).  It was clearly foreseeable and anticipated by all parties that Plaintiff

would need to prepare a brief, a reply brief, and all supporting evidence for the fee

request, and Plaintiff is entitled to have the fee award include that work.

For the reasons stated above, the hours included in the fee request for Walker's

work are reduced by 0.5 hour and the hours included in the fee request for Starzyk's

work are reduced by 5.3 hours.  The lodestar amount is, therefore, reduced to

$112,061.25.

### B.    *Johnson* Factors' Adjustment

Plaintiff does not seek an upward adjustment of the lodestar amount.  Although

the experience, reputation and ability of Plaintiff's two primary attorneys are

unchallenged, the fees requested by Plaintiff generally are in line with the customary

fee charged in Houston.  The Court agrees that no upward adjustment would be

appropriate.

Defendants argue that the lodestar amount should be adjusted downward

because Plaintiff did not prevail on all of her claims and because she has a

contingency fee arrangement with counsel.  Although Plaintiff abandoned one theory

of recovery for her sexual harassment claim, Plaintiff prevailed on virtually all issues presented to the Court for decision.  Specifically, Plaintiff prevailed on Palace's motion to dismiss and, except for the hostile work environment theory of the sexual harassment claim, on Defendants' motion for summary judgment.  Additionally, Plaintiff's decision to settle the lawsuit for a reduced amount -- an amount significantly less than the amount of fees requested -- should not and does not require a reduction in the amount of attorneys' fees awarded in the case.  The "results obtained" by Plaintiff in this case do not weigh in favor of reducing the lodestar amount.

Defendants note that Plaintiff's counsel represented her under a contingency fee arrangement.  Plaintiff would receive 60% and counsel would receive 40% of all sums recovered from Defendants, including sums recovered as attorneys' fees.  Defendants argue that, as a result of this fee agreement, the award of attorneys' fees should be limited to $18,334.00, which is approximately 40% of the amount paid to Plaintiff pursuant to the mediated settlement.  Although a contingency fee arrangement is a factor to be considered under *Johnson*, it is not dispositive and, indeed, is not entitled to "great authoritative weight" in determining an appropriate fee award.  *See, e.g., Hooker v. Constellation Homebuilder Sys., Inc.*, ___ F. Supp. 2d. ___, 2008 WL 819065, *7 (S.D. Tex. Mar. 24, 2009) (citing *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989)).

Instead, "the percentage of the recovery agreed to is helpful in demonstrating attorney's fee expectations" when the attorney agreed to represent the plaintiff. *See Johnson*, 488 F.2d at 718.   It appears from the record in this case that at the time counsel agreed to a 40% contingency fee arrangement, his expectations were that the case would settle quickly for an amount in excess of $75,000.00.  Instead, however, the case was vigorously defended, requiring significantly more work by counsel.  As a result, the contingency fee arrangement in this case does not accurately reflect the fee expectations of Plaintiff's counsel.   The Court concludes that Plaintiff's contingency fee agreement with her attorneys, the only one of the twelve *Johnson* factors that arguably favors reducing Plaintiff's fee award, does not require a downward adjustment to the lodestar amount.

## IV.    CONCLUSION AND ORDER

The Court has calculated the lodestar amount and, having considered the *Johnson* factors, concludes that no adjustment to the lodestar amount would be appropriate in this case.  Accordingly, it is hereby

**ORDERED** that Plaintiff is awarded fees in the total amount of **$112,061.25**. It is further

**ORDERED** that counsel for Plaintiff shall submit a proposed Final Judgment by June 12, 2009.

SIGNED at Houston, Texas this 5<u>th</u> day of **June, 2009.**

_____
Nancy F. Atlas
United States District Judge